UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-000307-R


CHRISTOPHER BABCOCK                                                    Plaintiff


v.


ANTHONY'S LLC, a New Jersey limited                                   Defendants
liability company

and MARC GUITMAN

and ROBERT GELLER

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants Anthony's, LLC, Marc Guitman i/s/a Marc Guitman, and Robert Geller's Motion to Dismiss as to Defendant Robert Geller pursuant to Federal Rule of Civil Procedure 9, 12(b)(2), and 12(b)(6).  (Docket No. 33.)  Plaintiff Christopher Babcock has responded, (Docket No. 42), and Defendants have replied. (Docket No. 46.)  This matter is now ripe for adjudication.  For the reasons that follow, Defendants' Motion to Dismiss will be **GRANTED**.


## BACKGROUND

This action involves eleven separate alleged contracts entered into by Plaintiff and Defendant Anthony's, LLC to purchase certain coins between November 2008 to October 2010.  These contracts allegedly originated from

either Plaintiff being the high bidder on "e-Bay" or through direct offers for sale from Defendants by either telephone or email solicitation. Over the course of the parties' relationship, Plaintiff alleges he repeatedly requested reassurances that the coins sold to him by Defendants were authentic. Plaintiff states Defendants repeatedly gave assurances that the coins sold were authentic.

On February 11, 2013, this Court permitted Plaintiff's First Amended Complaint ("Complaint") which added Robert Geller ("Geller") as a defendant. Geller is a manager at Anthony's, LLC. (Docket No. 33-2, Page 1.) Paragraph 2 of the Complaint explicitly states "Defendants" as used in the Complaint shall mean all of the defendants, thereby making all accusations and factual assertions about "Defendants" applicable to Geller. Plaintiff's Affidavit states Geller represented to Plaintiff in two separate telephone calls in 2008 and 2010 that he was "purchasing genuine coins that were not counterfeit" and he was receiving the correct weight of coins. (Docket No. 42-1, Page 1-2.) Additionally, the Affidavit states in the 2010 telephone call Geller encouraged Plaintiff to continue purchasing coins from Defendants and attempted to resolve a settlement relating to the alleged counterfeit and under-weight coins sold to him. (Docket No. 42-1, Page 2.)

Geller's Affidavit states that he did not participate in the listing of goods purchase by Plaintiff or negotiations with Plaintiff. (Docket No. 33-2.) He states he communicated with Plaintiff only once—in 2008—during the period when he was making purchases from Anthony's and that was when he answered

the phone when Plaintiff called with questions about certain lots of coins offered by Anthony's. *Id.* Geller states that "[o]ther than that single phone call, my only involvement with Plaintiff was, as a manager of Anthony's, to assist Marc Guitmann, an Anthony's employee, in his attempts to resolve Plaintiff's complaints amicably." *Id.* Finally, Geller states he is a New Jersey resident, has never traveled to Kentucky, and to his knowledge has never solicited business from anyone in Kentucky or personally communicated with any Kentucky residents in the course of doing business. *Id.*

Defendants make three separate arguments for why all the claims or some of the claims against Defendant Geller should be dismissed. First, Defendants argue the Complaint lacks allegations of sufficient contacts to support personal jurisdiction as to claims against Geller. Second, Defendants allege the addition of Geller as a defendant is improper because Plaintiff has alleged no specific conduct whatsoever that should make Geller personally liable for the acts alleged in the complaint. (Docket No. 33-3, Page 1.) Third, even if the Court preserves other claims against Geller, Defendants argue the claims sounding in fraud are not pled with sufficient particularity and should be dismissed. (Docket No. 33-3, Page 2.)

## DISCUSSION

### Personal Jurisdiction As To Defendant Geller

Defendants argue that the Complaint lacks allegations of sufficient contacts to support personal jurisdiction as to the newly amended claims against

Geller. The Sixth Circuit recognizes that personal jurisdiction may be either "specific" or "general," depending on the nature of the defendant's contacts with the forum state. *See, e.g.*, *Gerber v. Riordan*, 649 F.3d 514, 517 (6th Cir. 2011). In his Complaint, Plaintiff does not specify whether he believes personal jurisdiction is specific or general. Therefore, the Court will consider both possibilities.

## I.    General Jurisdiction Does Not Exist

"General jurisdiction is proper only where a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Gerber*, 649 F.3d at 517 (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)). The Supreme Court has held that a nonresident defendant who lacked a place of business and had never been licensed to do business in the forum state lacked sufficient contacts to support the exercise of general jurisdiction. *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416-18 (1984). In *Helicopteros*, the Court found that a number of contacts, including (1) sending a corporate officer to the forum to negotiate contracts, (2) accepting checks written on a forum bank, (3) purchasing a substantial sum of equipment and services from a forum state business, and (4) sending personnel to a forum state business for training—even when taken together—were insufficient to support the exercise of general jurisdiction. *Id.* By contract, the Court has found general

jurisdiction where a nonresident corporate officer maintained an office and held meetings in the forum state, supervised corporate business while situated in the forum state, distributed payroll checks drawn on a forum bank account, and engaged a forum bank in the corporation's business. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952). The Sixth Circuit follows this reasoning by declining to find general jurisdiction where a plaintiff "has not alleged that [the defendant] has an office in [the forum state], is licensed to do business there, has [a forum state] bank account, or directs its business operations from [the forum state]." *Bird v. Parsons*, 289 F.3d 865 873 (6th Cir. 2002).

In the instant case, Plaintiff does not allege that Defendant Geller maintains an office in Kentucky, is licensed to do business in Kentucky, maintains a bank account in Kentucky, or directed any operations from within Kentucky. It does not appear Geller has ever even been to Kentucky. Indeed, it appears that Geller has no contacts with Kentucky beyond two alleged isolated communications over the telephone in 2008 and 2010, during which Geller would have been in New Jersey. Accordingly, Plaintiff has not demonstrated that Geller's contacts with Kentucky are sufficiently continuous and systematic as to support the exercise of general personal jurisdiction.

## II. Specific Jurisdiction

In order to determine whether specific personal jurisdiction exists, a federal court applies the law of the forum in which it sits, subject to the

requirements of constitutional due process. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997). That is, "[a] federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Bird*, 289 F.3d at 888 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)).

i. <u>The Kentucky Long-Arm Statute</u>

As an initial matter, although courts previously have held that Kentucky's long-arm statute, Ky. Rev. Stat. § 454.210, extends to the outer reaches of due process, *see, e.g.*, *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 689 (W.D. Ky. 2010), the Kentucky Supreme Court recently clarified that the statute is not, *per se*, coextensive with the limits of federal due process. *Caesars Riverboat Casino, LLC v. Beach*, 336 SW.3d 51, 56-57 (Ky. 2011). Accordingly, for personal jurisdiction to be proper: (1) Kentucky's long-arm statute, § 454.210, must be satisfied; and (2) the exercise of jurisdiction must comport with due process. Therefore, this Court first turns to the question of whether this Court can exercise personal jurisdiction over Defendants under the Kentucky long-arm statute.

KRS 454.210(2)(a), Kentucky's long-arm statute, states:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> 1. Transacting any business in this Commonwealth

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;

6. Having an interest in, using, or possessing real property in this Commonwealth, providing the claim arises from the interest in, use of, or possession of the real property, provided, however, that such in personam jurisdiction shall not be imposed on a nonresident who did not himself voluntarily institute the relationship, and did not knowingly perform, or fail to perform, the act or acts upon which jurisdiction is predicated;

7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;

8. Committing sexual intercourse in this state which intercourse causes the birth of a child when:
    a. The father or mother or both are domiciled in this state;
    b. There is a repeated pattern of intercourse between the father and mother in this state; or
    c. Said intercourse is a tort or a crime in this state; or

9. Making a telephone solicitation, as defined in KRS 367.46951, into the Commonwealth.

Ky. Rev. Stat. § 454.210. Because Plaintiff mistakenly pled that "the limits of personal jurisdiction under Kentucky's Long-Arm Statute are coextensive with the boundaries of the due process clause," Plaintiff has not pointed to which of

the nine provisions serve as a basis for personal jurisdiction. (Docket No. 42, Page 6.) Therefore, the Court will look at each individual provision to determine if one of them provides a basis for personal jurisdiction.[1] In interpreting § 454.210(2)(a), the Kentucky Supreme Court instructs: "[w]hile we believe it fair to say that these provisions should be liberally construed in favor of long-arm jurisdiction, their limits upon jurisdiction must be observed as defined." *Caesars Riverboat Casino*, 336 S.W.3d at 56.

### 1. Provision 1 – "Transacting any business in this Commonwealth"

As the Kentucky Supreme Court only recently stated that the Kentucky long-arm statute must be analyzed separately from due process, there is little precedent interpreting the precise meaning of the phrase "transacting business" as used in § 454.210(2)(a)(1). Nonetheless, the Court finds that Geller did not transact business in Kentucky within the meaning of Ky. Rev. Stat. 454.210(2)(a)(1). The only contractual relationship alleged in the complaint is between Plaintiff and Anthony's, LLC.[2] Allegations against Geller all stem from two isolated phone calls—which do not even appear to have been initiated by Geller—in which Geller allegedly reassured Plaintiff the coins were genuine and encouraged him to make another purchase. The Court agrees with Defendant that "[s]imply answering the phone at [Geller's] place of employment is insufficient

---

[1] The Court notes that Defendants' reply brief focused on the first two provisions of § 454.210(2)(a)(1).
[2] Although this opinion focuses exclusively on Defendant Geller, the Court notes there is no indication that Anthony's, LLC actively promoted the sale of its products to Kentucky residents.

to deem that Mr. Geller, individually, was engaging in any type of activity that can satisfy the first prong." (Docket No. 46, Page 6.)

The Court does not believe that these allegations amount to "transacting of business." *See, e.g., Thompson v. Koko*, 2012 WL 374054, at *1-2 (W.D. Ky. Feb. 3, 2012) (finding that out-of-state defendant's actions of sending emails and letters, confirming receipt of a wire transfer, and sending account statements to the plaintiff in Kentucky did not amount to transacting business in Kentucky); *Mueller v. Heath*, 2013 WL 4511898, at *3 (W.D. Ky. Aug. 23, 2013) (finding, in a case alleging fraudulent inducement to invest in a security alarm company, that the defendants had not transacted business in Kentucky despite that the plaintiffs "may have wired funds from Kentucky [to an out-of-state entity] and suffered injury in Kentucky"); *Ford v. RDI/Caesars Riverboat Casino, LLC*, 503 F. Supp. 2d 839, 841-43 (W.D. Ky. 2007) (finding that the defendant transacted business in Kentucky where roughly half of its customers were from Kentucky, it derived substantial revenue—in excess of $109 million—from Kentucky residents, it advertised extensively in Kentucky, and it actively sponsored events in Kentucky and made considerable contributions to Kentucky charities); *Am. Trade Alliance, Inc. v. S. Cross Trading*, 2011 WL 112439, at *2 (Ky. Ct. App. Jan. 14, 2011) (finding that the defendant transacted business in Kentucky where it contracted to do business in Kentucky, accepted orders from and shipped goods to a Kentucky buyer, and actively promoted the sale of its products to Kentucky residents). Accordingly, the Court finds that Defendant Geller's conduct is not

encompassed within provision one of § 454.210(2)(a) for "transacting any business in this Commonwealth."

    2. <u>Provision 2 – "Contracting to supply services or goods in this Commonwealth"</u>

The alleged behavior of Geller would not be encompassed in provision two because there is no indication that Geller actually contracted "to supply services or goods in this Commonwealth." Any reference to such contracting has always been with respect to Anthony's, LLC and not Geller:

> a. On November 2, 2008, Plaintiff was the highest bidder on a lot of coins auctioned by **Anthony's** on ebay and described by **Anthony's** as "World Silver and old coin 88 pound lot."
> b. On November 20, 2008 Plaintiff and **Anthony's** entered into a contract for the purchase of certain coins . . . (emphasis added.)

(Docket No. 1 Complaint, Page 5.) *Hinners* is not inconsistent with this conclusion. *Hinners v. Robey*, 336 S.W.3d 891, 895-96 (Ky. 2011). In that case, the Kentucky Supreme Court found that Robey—who posted an eBay listing for a vehicle and subsequently completed the transaction with a Kentucky resident who was the high bidder in Missouri—had contracted to "supply services or goods in this Commonwealth." *Id*. at 896. In this case, there is no indication or allegation that Geller made the eBay listing or entered into a contract to sell the coins. At all times Geller was merely acting as an agent for Anthony's, LLC. Accordingly, Geller would not have been "contracting to supply services or goods in this Commonwealth" as required under provision two of § 454.210(2)(a).

3. Provision Three – "Causing tortious injury by an act or omission in this Commonwealth"

The alleged behavior of Geller would not be encompassed in provision three because the alleged tortious act or omission would not have occurred "in this Commonwealth." It is undisputed that Defendant Geller was at all relevant times located in New Jersey and the only alleged tortious actions were communications over the phone. Therefore, any tortious act would not have occurred "in this Commonwealth."

4. Provision Four and Five - Requiring that a person over whom jurisdiction is sought "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth . . ."

Provision four requires that a person for who jurisdiction is sought "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth . . ." Geller's alleged actions would not be encompassed in this provision. Plaintiff has not alleged that Geller regularly solicits businesses, engages in a persistent course or conduct, or derives substantial revenue in Kentucky. On the contrary, Plaintiff has alleged only two isolated phone calls in which communications with Geller took place.

Provision five has the same "regularity/persistent conduct/substantial revenue" requirement as provision four. For the same reasons, provision five would also not provide a basis for jurisdiction as to Geller. Provisions six

through eight would plainly not apply to provide jurisdiction as to Geller and any suggestion otherwise would be frivolous.

     5.  <u>Provision Nine – "Telephone Solicitation"</u>

Geller's alleged actions would not be a "telephone solicitation" as referenced in provision nine. A "telephone solicitation" is defined in KRS § 367.46951:

> (1) "Telephone solicitation" means:
>   (a) **A live or recorded communication sent by a telephone or message** sent by a facsimile machine to a residential, mobile, or telephone paging device telephone number, including a call made by an automatic dialing or recorded message device, for the purpose of:
>     1. **Soliciting a sale of consumer goods or services**, offering an investment, business, or employment opportunity, or offering a consumer loan to the person called;
>     2. Obtaining information that will or may be used for the solicitation of a sale of consumer goods or services, the offering of an investment, business, or employment opportunity, or the offering of a consumer loan to the person called;
>     3. Offering the person called a prize, gift, or anything else of value, if payment of money or other consideration is required in order to receive the prize or gift, including the purchase of other merchandise or services or the payment of any processing fees, delivery charges, shipping and handling fees, or other fees or charges; or
>     4. Offering the person called a prize, gift, or other incentive to attend a sales presentation for consumer goods or services, an investment or business opportunity, or a consumer loan; or
>   (b) A live or recorded communication sent by telephone, facsimile machine, mobile telephone, or telephone paging device in response to inquiries generated by unrequested notifications sent by the merchant to persons who have not previously purchased goods or services from the merchant or telemarketer or who have not previously requested credit from the merchant, to a prospective purchaser if the merchant or telemarketer

represents or implies to the recipient of the notification that any of the following applies:

1. That the recipient has in any manner been specially selected to receive the notification or the offer contained in the notification;
2. That the recipient will receive a prize or gift if the recipient calls the merchant or telemarketer; or
3. That if the recipient buys one (1) or more items from the merchant or telemarketer, the recipient will also receive additional or other items of the same or a different type at no additional cost or for less than the regular price of the items;

(2) "**Telephone solicitation" does not mean the following:**

(a) **A telephone call made in response to an express request of a person called, unless the request was made during a prior telephone solicitation**;

(b) A telephone call made to the debtor or a party to the contract **in connection with the payment or performance of an existing debt or contract, the payment or performance of which has not been completed at the time of the call**;

(c) A telephone call to any person with whom the telemarketer or merchant has a **prior or existing business relationship**, including but not limited to the solicitation of contracts for the maintenance or repair of items previously purchased from the person making the solicitation or on whose behalf the solicitation is made; . . . (emphasis added.)

Ky. Rev. Stat. § 367.46951. Significantly, inherent in any telephone solicitation is the notion that the "solicitor" does the calling. Plaintiff has not alleged that Geller actually initiated a telephone call *to* him, stating only that he "spoke with Robert Geller over the telephone in 2008 and 2010." (Docket No. 42-1.) Furthermore, Geller's Affidavit states that he only spoke to Plaintiff "once" and that was when he "happened to answer the phone." (Docket No. 33-2.) Accordingly, the Court holds that Geller's alleged conduct wouldn't constitute a "telephone solicitation."

In any event, even assuming Geller made the alleged calls, KRS § 367.46951(2) states a "telephone solicitation" does not mean a call made "in connection with the payment or performance of an existing debt or contract, the payment or performance of which has not been completed at the time of the call." It also states that a "telephone solicitation" does not mean a call made by someone who "has a prior or existing business relationship." Since any alleged conversation between Plaintiff and Geller is premised on Plaintiff's dissatisfaction with the coins he received under a contract, it would be "in connection with . . . an existing . . . contract." Furthermore, as an agent of Anthony's, Geller would arguably have a "prior business relationship" with Plaintiff.

## III.    Conclusion as to Kentucky Long-Arm Statute

Remaining cognizant of the recent instruction from the Kentucky Supreme Court that Kentucky's long-arm statute must be separately satisfied independent from any due process analysis, the Court has reviewed the nine provisions of the statute and found no basis for personal jurisdiction as to Defendant Geller based on Plaintiff's allegations. Accordingly, the Court lacks personal jurisdiction over Defendant Geller. Because Kentucky's long-arm statute does not establish a basis for personal jurisdiction over Geller, the Court need not determine whether or not the exercise of personal jurisdiction would comport with due process. However, because there is limited precedent interpreting the Kentucky long-arm statute and out of an abundance of caution, the Court will demonstrate

that even if this Court had personal jurisdiction over Geller under the Kentucky long-arm statute, the exercise of jurisdiction over Geller in any event would violate his due process rights under the Fourteenth Amendment. *See, e.g., Hinners v. Robey,* 336 S.W.3d 891, 900 (Ky. 2011) (finding defendant was not subject to personal jurisdiction in Kentucky under the federal due process analysis in the context of a single eBay contract); *DESA IP, LLC v. Pinnacle Products, Inc.,* No. 1:08-cv-87-R, 2009 WL 723225, at *7-8 (W.D. Ky. March 18, 2009) (finding lack of personal jurisdiction over individual officers of corporation).

## IV.    Due Process Analysis

"The Fourteenth Amendment's Due Process Clause sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2848 (2011). Due Process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). To satisfy due process, Plaintiff must "establish with reasonable particularity sufficient 'minimum contacts' with [Kentucky] so that the exercise of jurisdiction over [Geller] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Int'l Shoe*, 326 U.S. at 316). The Sixth Circuit has

distilled the due process requirements into a three part test, each part of which must be met in order for a court to assert personal jurisdiction over an out-of-state defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Neogen Corp.*, 282 F.3d at 889-90 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

The "purposeful availment" prong is satisfied when the defendants' contacts with the forum state are such that they "should reasonably anticipate being haled into court there." *Rudzewicz*, 471 U.S. at 475 (quotation omitted). The defendants' contacts must be more than "random," "fortuitous," or "attenuated." *Id.* When determining whether an interstate contract justifies the exercise of personal jurisdiction over a nonresident defendant, courts should examine the "prior negotiations and contemplated future consequences, along with the . . . parties' actual course of dealing" to determine whether the "defendant purposefully established minimum contacts within the forum." *Id.* at 479. In this regard, the Sixth Circuit focuses on where the negotiation and performance occurred, advising that the quality of a party's contacts with the forum state matter more than the quantity. *Calphalon*, 228 F.3d at 722. But "jurisdiction will not lie solely because the out-of-state defendant has *some*

business contacts with the forum state, particularly where the negotiation and performance of the agreement occurs largely out-of-state." *Papa John's Int'l, Inc. v. Entm't Marketing & Commc'ns Int'l, Ltd.*, 381 F. Supp. 2d 638, 643 (W.D. Ky. 2005) (emphasis in original) (citing *Calphalon*, 228 F.3d at 718; *Hillerich & Bradsby Co. v. Hall*, 147 F. Supp. 2d 672 (W.D. Ky. 2001)).

The Court does not believe that Geller purposefully availed himself of the Kentucky forum or that his contacts are more than "random," "fortituous," or "attenuated." *Rudzewicz*, 471 U.S. at 475. Plaintiff has alleged only two isolated phone calls. These phone calls appear to have been placed by Plaintiff *to* Geller at Anthony's, LLC. All communications by Geller were made while he was in New Jersey and acting as an agent of Anthony's, LLC. There is no indication that Geller deliberately reached out to or solicited Plaintiff—Geller merely answered a phone. The Court finds these are "random" or "attenuated" contacts which do not merit a finding that Geller "purposefully availed" himself of the Kentucky forum.

Because the Court finds this first element of the three-part test lacking, the Court need not address the remaining two prongs. *See Calphalon*, 228 F.3d at 721-22. Accordingly, the Court also finds a lack personal jurisdiction as to Defendant Geller because the exercise of jurisdiction would violate his due process rights under the Fourteenth Amendment. The Court need not address Defendants' other arguments for dismissal because it finds that it lacks personal

jurisdiction over Defendant Geller under both the Kentucky long-arm statute and the due process clause of the Fourteenth Amendment.

## CONCLUSION

Therefore, having considered Defendants' Motion and being otherwise sufficiently advised, for the foregoing reasons;

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to Defendant Geller, (Docket No. 33), is **GRANTED**. Defendant Geller shall be dismissed from this action.

IT IS SO ORDERED.

Date:

cc:     Counsel